[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This litigation comes before this court for resolution via a complaint and an amended complaint. For the purposes of this memorandum of decision the court would rely more fully on the final amended complaint, although referring where necessary to the prior complaints, since it is not made clear whether or not it was the intention of the plaintiffs to rely solely on its last complaint and to abandon the prior pleadings.
The final "amended complaint" is in two counts.
For purposes of brevity or clarity, the plaintiffs will be referred to in singular form; and the defendant, although a corporate entity, will be referred to as a personal defendant, since the principal of that corporation was represented exclusively by one, Eugene Schussheim, its president.
Succinctly stated the first count asserts that the plaintiff, about October 21, 1986 bought from the defendant, a newly constructed home in the town of Westport, although he had previously taken possession on August 15. 1986.
Within one year, after taking possession of the home, certain defects to the unit and its systems occurred, including but not limited to the faulty septic tank system, with damage to the landscaping and which system thereafter failed requiring design and installation of a new septic system; buckling of floors in dining room, living room, foyer and sun room: kitchen cabinetry breaking away from wall causing damage to dishware; resetting propane tank, plumbing repairs, driveway repairs, and roofing repairs.
The amended complaint which was filed more than two years after the original complaint now includes a claim for further recovery attributable to driveway repairs and roofing repairs.
The plaintiffs allege that the defendant has breached the implied warranties as set forth in Connecticut General Statutes47-118, in that it failed to construct in a workmanlike manner, in accordance with sound engineering standards; and that it also used defective materials.
The second count is pretty much a re-assertion of the first count, except that it sounds in negligence; in that it constructed the subsurface sewage disposal system in a careless manner; that it did not construct the subsurface sewage system according to the requirements of the pertinent codes of the town of Westport and the State of Connecticut; that the sewage drainage was inadequate, improperly located and constructed. CT Page 6538
Also the defendant failed to properly install floors with proper material, to properly install kitchen cabinets, plumbing and heating fixtures, and failed to properly construct the roof and flashing.
The answer of the defendant is in effect a general denial of the plaintiff's essential allegations.
Additionally, the defendant has interposed a counterclaim wherein it asserts that approximately one month prior to his purchase of a new home — newly constructed — from the defendant, the plaintiff asked the defendant to construct an expanded deck, and to design and construct a wine cellar; and to install additional electrical outlets on the premises to be purchased. The defendant alleges that the plaintiff orally agreed to pay to the defendant on completion for all the costs incurred plus a profit of 15%.
The defendant claims it completed these "extras" and that the total cost of labor and materials including a 15% profit is $50,000.00.
The defendant further adds by way of special defense that any obligation owed to the plaintiff has been discharged by an accord and satisfaction; that any damages suffered by the plaintiff and any claimed defects and conditions in, the construction of the dwelling were caused by the actions of the plaintiff in that they prohibited the defendant from correcting the alleged defects; also that the plaintiff failed to use care in mitigating damages. The defendant claims unspecified money damages.
The plaintiff denies the essential allegations of the amended counterclaim, and in his own special defense thereto, alleges that the defendant was paid in full for the work, materials, etc. of his counterclaim.
The plaintiff seeks to recover an award of damages in the amount of $75,643.35.
The defendant, by its counterclaim, seeks a recovery in the sum of $42,000.00.
The issues raised by the complaint and responses thereto are, namely, as to the first count, has the defendant breached the implied warranties as set forth in Connecticut General Statutes 47-118; and have the plaintiff's satisfactorily proved that the defendant was negligent in the ways alleged in the second count of the amended complaint. CT Page 6539
Has the defendant met its burden of proof with respect to its counterclaim seeking a recovery herein in the sum of $42,000.00 which was allegedly a charge above and beyond any other prior charges chargeable to the plaintiff.
Connecticut General Statutes 47-118, in its relevant parts states:
 Sec. 47-118. Implied warranties. (a) In every sale of an improvement by a vendor to a purchaser, except as provided in subsection (b) of this section or excluded or modified pursuant to subsection (d), warranties are implied that the improvement is: (1) Free from faulty materials; (2) constructed according to sound engineering standards; (3) constructed in a workmanlike manner, and (4) fit for habitation, at the time of the delivery of the deed to a completed improvement, or at the time of completion of an improvement not completed when the deed is delivered. (b) The implied warranties of subsection (a) of this section shall not apply to any condition that an inspection of the premises would reveal to a reasonably diligent purchaser at the time the contract is signed. (c) If the purchaser, expressly or by implication, makes known to the vendor the particular purpose for which the improvement is required, and it appears that the purchaser relies on the vendor's skill and judgment, there is an implied warranty that the improvement is reasonably fit for the purpose. (d) Neither words in the contract of sale, nor the deed, nor merger of the contract of sale into the deed is effective to exclude or modify any implied warranty; provided, if the contract of sale pertains to an improvement then completed, an implied warranty may be excluded or modified wholly or partially by a written instrument, signed by the purchaser, setting forth in detail the warranty to be excluded or modified, the consent of the purchaser to the exclusion or modification, and the terms of the new agreement with respect to it. (e) The implied warranties created in this section shall terminate: (1) In the case of an improvement completed at the time of the CT Page 6540 delivery of the deed to the purchaser, one year after the delivery or one year after the taking of possession by the purchaser, whichever occurs first; and (2) in the case of an improvement not completed at the time of delivery of the deed to the purchaser, one year after the date of the completion or one year after taking possession by the purchaser, whichever occurs first.
With regard to the counterclaim of the defendant, wherein it is alleged that in September of 1986, and prior to the closing, it was agreed, by word of mouth, that the defendant would perform some extra work on the premises, namely an expanded deck, a wine closet, and some added electrical outlets. It is alleged that the plaintiff was to pay the defendant, for this work, the actual cost of the materials used, plus an added profit factor of 15%.
Although the plaintiff argues that the added deck was included in a final punch list of October 6, 1986; and that an escrow sum of $50,000.00 was withheld until completion of the items on the punch list: and that a check, in that amount was delivered to the defendant, and was noted as "paid in full etc.," which the defendant endorsed and cashed. These are significant contentions on the part of the plaintiff in support of his position.
Beyond these contentions, however, is the fact that the defendant offered no written submissions, or records of any kind, as they might have been related to the construction of the subject premises. It was the defendant's preference to explain this void, by relating to the Court that a maid in his home had cleaned away or swept away the top of his desk into the wastebasket, everything pertinent to this litigation and without permission to do so.
The defendant was, at the time in question, engaged in constructing a housing development, of substantial dollar value. To now try and convince this court that in a building project of this magnitude, all of its records were on the top of a desk, challenges the credulity of anyone sitting in judgment of this controverted factual situation.
Even more so, during the course of this trial it became apparent that counsel for the defendant was alluding to a writing of some unexplained character, and the defendant hurriedly left the courtroom and after several minutes returned and handed a paper to his lawyer. The Court would infer from this conduct on the part of the defendant, that there were in CT Page 6541 fact records in the possession of the defendant, which he sought to keep out of the courtroom and beyond inspection of opposing counsel, unless it served his purpose to offer them.
The Court would hold that the defendant has not established within the normally accepted evidentiary parameters that he ought to recover for the claimed extra work, i.e., the expanded deck, the wine closet, and extra electric outlets.
The defendant, correctly asserts, that our law is clear that one can testify to the reasonable value of his or her own property or services. However, the credibility of that testimony is severely impugned by the explanation of the defendant as to why he has no records, or as to why he elected to leave the courtroom to retrieve from some unknown depository, a record that might now serve his purpose.
As to the allegations of the complaint in either of its two counts; i.e., breach of warranty and/or negligence the court is of the opinion that the burdens of the plaintiff as to the measure of proof remains with them, and remains constant.
The plaintiff has acknowledged that he engaged "outside persons" to do the septic work and repair work, because they had lost all confidence in defendant's ability to perform the work in a professional and competent manner.
Although this reasoning on the part of the plaintiff may very well be acceptable under some circumstances, there was no testimony offered by any witness in this case that the plaintiff's were pointedly justified in excluding the defendant from any participation or discussion in what could be correctively done to alleviate the situation.
True, the plaintiff bought a house from the defendant, which developed some defects, and which the plaintiff discovered, either within or beyond any statutory time periods. This, however, is not unusual in the purchase of a newly-constructed home. The Court would be quick to hold that defects in the construction of a new home — however few or many — is the usual, rather than the unusual.
The plaintiff has failed to point out to the court, any specific conduct on the part of the defendant that would justify the plaintiff assuming such a cavalier attitude, that he now feels he should preclude the defendant from anything to do with the home he bought, and for which defects as alleged, he now seeks to fasten a multitude of costs or expenses upon the defendant. CT Page 6542
The Court is of the opinion that this position is untenable and unfair.
The Court feels that this attitude, subjective as it may be, unfairly colors the plaintiff's conduct in the incurring of bills which he now wants the Court to regard as legal damages.
The Court is further of the opinion that for some unexplained reason, other than the claimed defects in the house which he bought, a negative relationship developed between the parties.
Although this relationship may or may not have been justified, it certainly did not entitle the plaintiff to launch a spending-spree to soothe his ruffled feelings, nor to fairly justify the Court in allowing those expenditures as damages. The Court will not and should not subsidize any such concept of the law which the plaintiff now seeks of the court in his quest for the recovery of a money award. This is not the law of this state as it relates to the issue of proper and legal damages.
This court is not satisfied that the plaintiff has adequately proved that the full measure of damages he now claims, following a complete replacement and relocation of the septic system was necessary. The testimony does not adequately support that position.
Nor was it fairly established within the appropriate parameters of proof that corrective measures, other than a complete replacement of the septic tank would not have afforded the necessary relief.
The Court holds that there has been a breach of warranty and/or warranties within the purview of the aforementioned statute.
The Court holds further that there was negligence on the part of the defendant in the construction of the home which he built and sold to the plaintiffs, and he (it) should respond in damages.
The Court holds that the plaintiffs ought to recover of the defendant the sum of $32,500.00 plus the costs of court, and this holding would appear to be dispositive of any other issues raised by the complaint.
Judgment may enter for the plaintiffs on the defendant's counterclaim.
Judgment may enter for the plaintiffs to recover of the CT Page 6543 defendant the sum of $32,500.00 plus costs of court.
HERMAN, J. STATE TRIAL REFEREE